# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF NORTH CAROLINA Western Division

FILED

OCT 20 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY [signature] DEP CLK

**KEITH CASHAWN ALSTON,**
Plaintiff,

v.

**NORTH CAROLINA AND CUMBERLAND COUNTY CHILD-SUPPORT / COURT ACTORS, AND OTHER PERSONS OR ENTITIES TO BE IDENTIFIED THROUGH RECORDS AND DISCOVERY,**
Defendants.

5:26-CV-00811-D

# COMPLAINT FOR CIVIL-RIGHTS VIOLATIONS, PROCEDURAL DUE PROCESS, RECORD-INTEGRITY VIOLATIONS, AND CIVIL CONSPIRACY

**42 U.S.C. § 1983 and Related Law**

Plaintiff Keith Cashawn Alston, proceeding pro se, alleges as follows:

# I. NATURE OF THE ACTION

1. This action arises from an alleged continuing course of governmental and court-connected conduct involving custody proceedings, child-support initiation and calculation, maintenance and transmission of official records, interstate enforcement, wage withholding, state interception, federal Treasury offsets, evidence handling, notice, and Plaintiff's repeated attempts to dispute and resolve the underlying matters.
2. Plaintiff brings this action principally under **42 U.S.C. § 1983** for alleged deprivations of rights protected by the Constitution and laws of the United States.

3. Plaintiff further alleges coordinated or joint conduct among particular actors where the evidence establishes participation in the same underlying deprivation of Plaintiff's constitutional rights.
4. Plaintiff's civil-conspiracy allegations concern the alleged connection between specific people, records, communications, actions, and resulting constitutional injuries. Plaintiff does not rely merely upon the fact that multiple governmental entities participated in child-support or court processes.
5. This action is **not pleaded as a civil RICO action.**
6. Plaintiff's allegations are based upon two related factual foundations:
   a. the custody and court-process history involving Plaintiff and Angela Vorholt; and
   b. the child-support and enforcement history involving the initiation, calculation, maintenance, transmission, certification, and enforcement of the support obligation.
7. Plaintiff alleges that these two foundations became connected when information, actors, records, decisions, or communications from one matter were used in or affected the other.

# II. JURISDICTION

## A. Subject-Matter Jurisdiction

8. This Court has federal-question jurisdiction under **28 U.S.C. § 1331** because Plaintiff asserts claims arising under the Constitution and laws of the United States.
9. This Court has jurisdiction over Plaintiff's civil-rights claims pursuant to **28 U.S.C. § 1343(a)(3) and (4)** and **42 U.S.C. § 1983**.
10. To the extent Plaintiff asserts legally viable state-law claims arising from the same nucleus of operative facts, Plaintiff invokes supplemental jurisdiction under **28 U.S.C. § 1367**.
11. Plaintiff's federal claims concern independently alleged constitutional injuries arising from the conduct of governmental or governmental-connected actors.
12. Plaintiff does not ask this Court merely to sit as an appellate court reviewing an unfavorable state-court judgment.
13. Plaintiff instead challenges independently actionable conduct, including alleged deficiencies in notice and opportunity to be heard, maintenance or transmission of disputed information, evidence handling, enforcement actions, and coordinated conduct causing constitutional or financial injury.

## B. Personal Jurisdiction

14. The conduct underlying this action substantially occurred in North Carolina or was allegedly initiated, authorized, maintained, transmitted, certified, or caused by persons or governmental entities operating within North Carolina.

15. Plaintiff alleges that the North Carolina defendants and other North Carolina actors purposefully participated in the proceedings, records, enforcement activities, communications, certifications, or decisions forming the basis of this action.
16. Plaintiff therefore alleges that this Court may exercise personal jurisdiction over defendants whose relevant conduct occurred within North Carolina or who otherwise possess sufficient contacts with this forum.
17. Personal jurisdiction as to each defendant shall ultimately be established according to that defendant's individual conduct and contacts.

# III. VENUE

18. Venue is alleged to be proper in the Eastern District of North Carolina under **28 U.S.C. § 1391(b)** to the extent a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district and defendants responsible for those events reside or perform governmental functions within the district.
19. Cumberland County, North Carolina, is located within the Eastern District of North Carolina.

# IV. PARTIES AND ACTORS

## Plaintiff

20. Plaintiff **Keith Cashawn Alston** is the father whose custody, parental relationship, income, property, wages, tax refunds, Treasury payments, and child-support obligations are directly affected by the conduct alleged in this Complaint.

## Defendants and Other Responsible Actors

21. Plaintiff presently identifies North Carolina and Cumberland County child-support, court, governmental, supervisory, legal, and related actors whose specific responsibility must be determined from the records presently available and through discovery.
22. Plaintiff will identify each responsible defendant according to the person's own acts, omissions, knowledge, authority, participation, communications, and causal relationship to Plaintiff's injuries.
23. Plaintiff does not seek to impose liability merely because a person held a supervisory title or worked for an agency involved in the proceedings.
24. Plaintiff alleges liability only where the evidence establishes personal participation, legally sufficient supervisory responsibility, implementation of a policy or custom, joint action, or another recognized basis for liability.

25. Plaintiff further alleges that discovery is necessary to identify persons who created, changed, approved, transmitted, certified, received, or continued to rely upon disputed information after receiving notice that Plaintiff challenged the information.

# V. FOUNDATION ONE — CUSTODY AND COURT PROCESS

26. The earliest presently identified proceeding is **Orange County, North Carolina Case No. 04-CVD-2244.**
27. Plaintiff's records identify a **November 22, 2004** domestic-violence complaint and a **February 4, 2005** order continuing approximately through February 4, 2006.
28. Plaintiff states that he lacked counsel during relevant portions of the Orange County proceeding.
29. Plaintiff states that **Willie Capel** was present during events relevant to the signing and court process.
30. Plaintiff alleges that he was pressured to sign and was not permitted to meaningfully present his position.
31. The Orange County proceeding forms part of the historical record leading into the later Cumberland County proceedings.
32. Plaintiff subsequently became involved in Cumberland County custody proceedings involving **Keith Alston and Angela Vorholt.**
33. Plaintiff alleges that proceedings moved through different courtrooms and judicial actors.
34. Plaintiff alleges that evidence he supplied was ignored, removed, not substantively addressed, or was not carried forward as proceedings continued.
35. Plaintiff identifies dated text messages, text-to-email records, attorney communications, school-related audio/video evidence, witnesses, court records, and other documentary materials supporting his reconstruction of these events.
36. Plaintiff alleges that supervised visitation and other restrictions affected his ability to maintain his relationship with his children.
37. Plaintiff further alleges that termination of his parental rights was raised during the proceedings despite what Plaintiff contends was contrary evidence concerning his conduct and parental relationship.
38. During the **2017 period**, Plaintiff alleges that child-support information was introduced into custody-related proceedings.
39. Plaintiff further alleges that an officer of the court obtained a child-support order in a hallway or outside what Plaintiff understood to be a full evidentiary child-support hearing.
40. Plaintiff seeks the transcript, docket, orders, minute entries, courtroom records, and witness testimony necessary to establish precisely what occurred.

# VI. FOUNDATION TWO — CHILD SUPPORT AND ENFORCEMENT

41. Plaintiff's presently identified child-support records include the following identifiers:

- **05-CVD-3026**
- **Child Support Case ID 0005140530**
- **Order ID 3705105CVD003026**
- **17-CSE-07681**
- **25-CSE-02841**

42. Plaintiff disputes the factual and procedural foundation used to initiate, calculate, maintain, and enforce the child-support obligation.
43. Plaintiff alleges that the complete record must establish the initiating document, legal authority, effective date, income information, worksheets, credits, adjustments, modifications, payment history, arrears calculations, certifications, and subsequent enforcement actions.
44. Plaintiff further alleges that he repeatedly attempted to understand, challenge, resolve, or close the child-support matter but was not provided an accessible and meaningful process sufficient to address the complete underlying record and continuing enforcement.

# VII. 2017 DISPUTED ARREARS FIGURE

45. A disputed **$5,492.40** figure appears in Plaintiff's 2017 child-support history.
46. Plaintiff disputes the factual and procedural foundation for that arrears figure and any retroactive calculation associated with it.
47. Plaintiff alleges that the records supporting that calculation must show how the amount was calculated, the period covered, income used, payments and credits applied, modifications considered, and the legal authority relied upon.
48. The **2017 $5,492.40 disputed figure is separate from Plaintiff's later Treasury and IRS offsets** and shall not be combined with those later collections.

# VIII. INTERSTATE ENFORCEMENT

49. Plaintiff lived in **South Carolina from approximately 2017 through 2020**.
50. Plaintiff thereafter lived in **Georgia from approximately 2020 through the present period**.
51. Plaintiff alleges that enforcement continued while he lived outside North Carolina.
52. Plaintiff seeks records establishing:

- what North Carolina transmitted;

- when it was transmitted;
- the governmental or private recipient;
- the address used for Plaintiff;
- the order represented as enforceable;
- the balance or arrears represented;
- the authority asserted for interstate enforcement;
- what notice was generated;
- what opportunity existed to challenge the information; and
- how every amount collected was credited.

# IX. 2019 TREASURY/IRS OFFSET

53. Plaintiff states that in **2019 more than $5,000** was taken through a Treasury/IRS child-support offset.
54. The exact amount of the 2019 offset must be established from the original federal and state certification records.
55. Plaintiff specifically alleges that the 2019 collection is a separate event and must **not** be replaced with or treated as the **2017 disputed $5,492.40 arrears figure**.
56. Plaintiff seeks the certification, notice, address, amount, payment, distribution, credit, and account records associated with the 2019 offset.

# X. 2024–2026 ENFORCEMENT RECORD

57. Plaintiff possesses an **October 1, 2024 NC Child Support Services Notice of Intent to Intercept and Statement of Account.**
58. That document reflects approximately **$2,371.15 in non-TANF past-due support** and describes state and federal interception mechanisms and review procedures.
59. Plaintiff's preserved Cumberland County Child Support correspondence also includes letters dated:

- **November 1, 2024**
- **April 29, 2026**
- **May 15, 2026**

60. Plaintiff alleges that these communications are relevant to determining when agency personnel knew about Plaintiff's dispute, what information Plaintiff requested, what information the agency possessed, what information was supplied, and whether enforcement continued after notice of Plaintiff's challenge.
61. A **May 12, 2026 Income Withholding for Support** record identifies:

- Holman Contract Warehouse Inc.;
- Child Support Case ID **0005140530**;
- Order ID **3705105CVD003026**; and
- NC Child Support Centralized Collections.

62. Plaintiff alleges that income had been taken through child-support enforcement since approximately **2019**, and the complete withholding record is necessary to determine the amount collected and credited throughout the enforcement period.

# XI. MARCH 18, 2026 TREASURY OFFSET

63. Plaintiff possesses a **March 18, 2026 U.S. Department of the Treasury, Bureau of the Fiscal Service offset notice**.
64. Plaintiff alleges that he did not receive advance notice sufficient to allow him to meaningfully challenge the asserted child-support debt before the 2026 offset occurred.
65. Plaintiff seeks records establishing what notice was legally required, what notice was actually generated, the address to which it was sent, the date of mailing, the debt amount certified, the person or entity responsible for certification, and the records supporting that certification.
66. Plaintiff further seeks records identifying any dispute flags, administrative reviews, adjustments, reversals, or credits relating to that collection.

# XII. RECORD-INTEGRITY THEORY

67. A central issue in this action is whether materially disputed, incomplete, or inaccurate information entered governmental records and thereafter continued producing consequences through multiple systems.
68. The record chain Plaintiff seeks to establish includes:

**Original Information → Court/CSE Record → Calculation → Order/Account → NC Child Support System → Interstate or Employer Enforcement → Federal Certification → Treasury Offset → Financial Injury.**

69. Plaintiff alleges that each stage must be examined separately to determine:

- who created the information;
- who entered it;
- who modified it;
- who approved it;
- who transmitted it;
- who certified it;
- who received it;
- who relied upon it;
- what contrary information existed;
- when each actor learned of Plaintiff's dispute; and
- what action was taken after receiving that knowledge.

70. Plaintiff alleges that he made repeated attempts to challenge or resolve the child-support matter.
71. Plaintiff alleges that despite those attempts, enforcement continued.
72. Plaintiff therefore seeks to determine whether responsible actors continued relying upon disputed information without providing a constitutionally adequate mechanism for meaningful correction.

# XIII. "NO JURISDICTION" RECORD

73. Plaintiff has identified a child-support/hearing record containing the notation **"No jurisdiction."**
74. Plaintiff preserves that notation as part of the evidence concerning jurisdiction and record integrity.
75. Plaintiff seeks identification of:

- who entered or wrote the notation;
- the date it was entered;
- the proceeding to which it referred;
- the system or document in which it originated;
- what type of jurisdiction was being referenced;
- whether any governmental actor reviewed the notation;
- what action followed it; and
- why enforcement continued if the notation reflected a jurisdictional defect affecting enforcement.

# XIV. NAME AND IDENTIFIER INTEGRITY

76. Plaintiff's records contain differences in capitalization, spelling, case numbers, order numbers, and administrative identifiers.
77. Plaintiff preserves those differences because accurate identification and matching of records are material to determining whether information from separate proceedings was combined, transmitted, or relied upon.
78. Plaintiff seeks audit records identifying the identifiers used by each system and the basis upon which records were matched or merged.

# XV. PROCEDURAL DUE PROCESS

79. The Fourteenth Amendment prohibits a State from depriving a person of life, liberty, or property without due process of law.

80. Plaintiff alleges protected property interests were affected through wage withholding, interception, Treasury offsets, and other collection activity.
81. Plaintiff further alleges a protected liberty interest in his parent-child relationship was affected by governmental conduct in the custody proceedings.
82. Plaintiff alleges that particular defendants deprived him of constitutionally sufficient notice or a meaningful opportunity to understand, dispute, correct, or challenge material information before or during particular deprivations.
83. Plaintiff alleges that merely providing a nominal procedure does not resolve his claim where the procedure actually provided did not give him a meaningful opportunity to challenge the information responsible for the deprivation.
84. Plaintiff alleges that he repeatedly attempted to obtain records and resolve the disputed matters.
85. Plaintiff alleges that enforcement nevertheless continued while material factual and procedural issues remained disputed.
86. Plaintiff seeks liability only against those defendants whose own conduct caused or participated in an actionable deprivation.

# XVI. PARENT-CHILD RELATIONSHIP

87. Plaintiff alleges governmental conduct affected his ability to maintain a relationship with his children.
88. Plaintiff alleges years of lost visitation, holidays, ordinary parental experiences, communication, emotional connection, and other aspects of the parent-child relationship.
89. Plaintiff does not base this claim merely upon disagreement with an unfavorable custody decision.
90. Plaintiff instead alleges that governmental actors used or maintained defective processes, failed to properly address material evidence, or participated in conduct affecting his parental relationship without constitutionally adequate process.

# XVII. ABILITY TO PAY AND ENFORCEMENT

91. Plaintiff alleges that child-support enforcement repeatedly affected his wages and financial resources.
92. Where enforcement involved civil contempt or threatened incarceration for nonpayment, Plaintiff alleges that constitutionally required ability-to-pay safeguards were required.
93. **Turner v. Rogers, 564 U.S. 431 (2011)** recognizes due-process protections relevant to civil child-support contempt proceedings, including safeguards directed toward the defendant's ability to pay.

94. Plaintiff will apply Turner only to proceedings in which its legal requirements are applicable.

# XVIII. CIVIL CONSPIRACY / JOINT ACTION

95. Plaintiff alleges that the constitutional injuries described in this Complaint were not necessarily produced by one isolated person or event.
96. Plaintiff alleges that records, information, decisions, communications, and enforcement actions moved among multiple actors and governmental systems.
97. Plaintiff alleges that discovery will establish whether particular defendants reached an agreement, understanding, or meeting of the minds to participate in conduct intended to deprive Plaintiff of federally protected rights.
98. Plaintiff further alleges that the conspiracy claim is based upon the underlying constitutional violations and is not asserted merely because multiple agencies or individuals communicated with one another.
99. Evidence relevant to the conspiracy and joint-action allegations includes:

- internal communications;
- case notes;
- referrals;
- supervisory instructions;
- communications between court-connected and CSE actors;
- communications regarding Plaintiff's evidence and disputes;
- record modifications;
- evidence handling;
- certification decisions;
- audit logs;
- interstate communications; and
- communications concerning continuation of enforcement.

100. Plaintiff alleges that defendants who knowingly agreed to and participated in an unconstitutional course of conduct may be liable under §1983 according to their individual participation.

# XIX. MUNICIPAL / ENTITY LIABILITY

101. To the extent a county or municipal entity is properly named, Plaintiff alleges that discovery must determine whether the constitutional injuries resulted from an official policy, widespread custom or practice, legally actionable failure to train or supervise, or decision of an authorized final policymaker.
102. Plaintiff does not seek municipal liability solely because a governmental entity employed an individual defendant.
103. Plaintiff seeks records concerning policies and practices governing:

- evidence retention;
- disputed child-support balances;
- notice;
- record corrections;
- interstate enforcement;
- federal offset certification;
- supervisory review;
- complaints;
- audit procedures; and
- continued enforcement following a dispute.

# XX. INDIVIDUAL AND SUPERVISORY RESPONSIBILITY

104. Plaintiff seeks to establish liability actor by actor.
105. For each defendant, Plaintiff will identify:

**Name | Position | Employer | Date | Action/Omission | Information Known | Contrary Evidence Available | Authority Exercised | Resulting Consequence | Injury | Capacity | Immunity Issue | Supporting Evidence.**

106. Supervisory liability will not be based solely upon title.
107. Plaintiff alleges supervisory responsibility only where the evidence establishes the supervisor's own conduct, knowledge, deliberate decision, legally sufficient supervisory connection, implementation of policy, or another legally recognized basis.

# XXI. IMMUNITY AND CAPACITY

108. Plaintiff recognizes that immunity depends upon the defendant, the particular conduct challenged, the capacity in which the defendant is sued, and the relief requested.
109. Plaintiff will distinguish individual-capacity claims from official-capacity claims.
110. Judicial actors will be evaluated according to the specific act challenged, including whether the act was judicial in nature and whether it was performed within the jurisdiction legally available to the judicial officer.
111. Court employees, agency personnel, attorneys, supervisors, county actors, state actors, and private participants must each be analyzed according to the functions they actually performed.

112. Plaintiff seeks prospective relief against appropriate officials where an ongoing violation exists and federal law permits such relief, including where applicable under **Ex parte Young** principles.

# XXII. PRIVATE ACTORS AND JOINT PARTICIPATION

113. Plaintiff does not allege that a private attorney or private party automatically becomes a state actor merely by participating in court proceedings.

114. Plaintiff alleges §1983 liability against any private participant only if evidence establishes legally sufficient joint action, state action, conspiracy, or another recognized basis for treating the conduct as action under color of state law.

# XXIII. COUNT I — 42 U.S.C. § 1983: PROCEDURAL DUE PROCESS

115. Plaintiff incorporates the preceding allegations.

116. Defendants acted under color of state law to the extent established for each individual defendant.

117. Plaintiff possessed protected liberty and/or property interests affected by defendants' conduct.

118. Plaintiff alleges particular defendants caused deprivations involving financial collections, enforcement, or the parent-child relationship without constitutionally sufficient notice or meaningful opportunity to be heard.

119. Plaintiff alleges these actions caused economic and non-economic injury.

120. Plaintiff therefore seeks relief under **42 U.S.C. § 1983** against defendants for whom the evidence establishes the required elements.

# XXIV. COUNT II — § 1983 CONSPIRACY / JOINT ACTION

121. Plaintiff incorporates the preceding allegations.

122. Plaintiff alleges that particular defendants agreed, coordinated, or jointly participated in conduct intended to deprive Plaintiff of federally protected rights.

123. Plaintiff alleges overt conduct was undertaken in furtherance of that agreement or coordinated action.

124. Plaintiff alleges that an actual constitutional deprivation resulted.

125. Plaintiff seeks discovery concerning communications and records uniquely within defendants' possession that will identify the participants, timing, scope, and purpose of the alleged coordinated conduct.

# XXV. COUNT III — MUNICIPAL LIABILITY WHERE SUPPORTED

126. Plaintiff incorporates the preceding allegations.

127. To the extent discovery and existing records identify an appropriate county or municipal defendant, Plaintiff alleges that a policy, custom, practice, legally actionable failure to train or supervise, or final-policymaker decision caused a constitutional deprivation.

128. Plaintiff seeks to establish the particular policy or practice and causal connection through records and discovery rather than through respondeat superior.

# XXVI. NORTH CAROLINA CIVIL CONSPIRACY — WHERE LEGALLY SUPPORTED

129. Plaintiff incorporates the preceding allegations.

130. Plaintiff alleges coordinated conduct among multiple persons caused actionable underlying wrongs and resulting injury.

131. Plaintiff's North Carolina civil-conspiracy theory is derivative of actionable underlying conduct and is not asserted as an independent wrong standing alone.

132. Plaintiff reserves final identification of the participants and underlying state-law tort or wrong until the supporting records and applicable immunity issues have been established.

# XXVII. DAMAGES AND INJURIES

133. Plaintiff alleges years of financial hardship arising from the challenged enforcement conduct.

134. Plaintiff seeks recovery of funds proven to have been improperly withheld, intercepted, offset, or otherwise collected as a result of actionable unlawful conduct.

135. Plaintiff further alleges consequential financial injuries resulting from the loss of those funds.

136. Plaintiff alleges emotional distress, humiliation, and continuing emotional injury arising from the conduct described in this Complaint.

137. Plaintiff alleges substantial injury to his relationship with his children, including lost visitation, holidays, ordinary parental experiences, emotional separation, and continuing effects on the father-child relationship.

138. Plaintiff alleges that these injuries cannot be measured solely by the amount of money collected through child-support enforcement.

139. Plaintiff nevertheless seeks compensatory damages only for injuries legally attributable to actionable conduct proven against the responsible defendants.

140. Plaintiff seeks a complete accounting of:

- obligations;
- assessments;
- arrears;
- payments;
- wage withholding;
- state intercepts;
- federal Treasury offsets;
- credits;
- adjustments;
- modifications;
- reversals;
- distributions; and
- the actual remaining balance.

141. **Carey v. Piphus, 435 U.S. 247 (1978)** and **Memphis Community School District v. Stachura, 477 U.S. 299 (1986)** recognize the distinction between actual compensable injury and damages based solely upon the abstract value of a constitutional right.

# XXVIII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing all relief legally available and supported by the evidence, including:

A. A declaration concerning constitutional violations established through the evidence, where declaratory relief is jurisdictionally available;

B. Compensatory damages for actual economic losses caused by legally responsible defendants;

C. Compensatory damages for proven non-economic injuries caused by legally responsible defendants;

D. Nominal damages for constitutional violations where actual compensable damages cannot otherwise be established;

E. Punitive damages against individual defendants where their conduct satisfies the governing legal standard and immunity does not prohibit recovery;

F. Prospective injunctive relief against appropriate officials where Plaintiff establishes an ongoing violation and satisfies the requirements for such relief;

G. A legally available accounting or production of account information necessary to establish the complete child-support enforcement and payment history;

H. Appropriate correction or prospective relief concerning governmental records where Plaintiff establishes that inaccurate information continues to cause an actionable constitutional injury and such relief is legally available;

I. Costs and any attorney's fees legally recoverable pursuant to **42 U.S.C. § 1988**, if applicable; and

J. Such other relief as the Court determines lawful, equitable, and appropriate.

# XXIX. RECORDS AND DISCOVERY NECESSARY TO ESTABLISH RESPONSIBILITY

Plaintiff seeks records including:

1. Certified original support orders, modifications, worksheets, calculations, and complete payment ledgers;
2. The complete **2017 calculation and order record supporting the disputed $5,492.40 figure**;
3. Interstate IV-D referrals, registrations, direct-income-withholding records, and communications involving South Carolina and Georgia;
4. Federal offset certification records for **2019 and 2024–2026**, with the events maintained separately;
5. Notices, addresses, mailing records, certification amounts, audit history, reversals, distributions, and credits;
6. CSE case notes and internal communications;
7. Supervisory records;
8. Database audit logs and record-change history;
9. Dispute flags and records reflecting Plaintiff's attempts to challenge the account;
10. The source, author, date, context, and legal meaning of the **"No jurisdiction"** notation;

11. Court dockets and transcripts;
12. Minute entries;
13. Evidence logs and exhibits;
14. Records establishing what evidence was received, retained, transferred, rejected, removed, or otherwise handled;
15. Communications concerning the introduction of child-support information into custody proceedings;
16. Employer withholding transmissions;
17. Records concerning later correction, modification, termination, or cancellation of withholding;
18. Communications involving Angela Vorholt, attorneys, court personnel, CSE personnel, or other actors to the extent relevant and discoverable;
19. Records identifying every person who created, approved, transmitted, modified, certified, or relied upon disputed information; and
20. Policies, manuals, training materials, procedures, and supervisory instructions applicable to the challenged conduct.

# XXX. MASTER ACTOR / RESPONSIBILITY AND EVIDENCE MATRIX

For purposes of identifying the responsible defendants and connecting each claim to evidence, Plaintiff's records and discovery shall be organized using the following structure:

**Date | Case Number | Agency/Court | Actor | Actor's Position | Exact Action | Document/Evidence | Information Actor Had | Contrary Evidence Available | Authority Claimed | Due Process Provided | Record Sent To | Resulting Consequence | Injury | Possible Claim | Immunity/Defense Issue | Discovery Needed**

This structure is intended to distinguish the conduct of each actor and prevent unrelated dates, cases, proceedings, or enforcement events from being improperly combined.

# XXXI. PRESERVATION OF DISTINCT EVENTS

Plaintiff specifically preserves the following distinctions:

**2017:** disputed **$5,492.40 arrears/calculation figure**.

**2019:** separate Treasury/IRS child-support offset in an amount Plaintiff states exceeded **$5,000**, with exact amount to be established from the original records.

**October 1, 2024:** NC Child Support Services Notice reflecting approximately **$2,371.15 non-TANF past-due support**.

**March 18, 2026:** U.S. Treasury Bureau of the Fiscal Service offset notice.

**April 29, 2026:** preserved Cumberland County Child Support correspondence.

**May 12, 2026:** Income Withholding for Support record involving Holman Contract Warehouse Inc., Case ID 0005140530, and Order ID 3705105CVD003026.

**May 15, 2026:** preserved Cumberland County Child Support correspondence.

These amounts, documents, and events shall not be merged merely because they concern the same general child-support history.

# XXXII. JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues for which a jury trial is available under federal law.

# XXXIII. CONCLUSION

Plaintiff alleges that this action concerns more than the existence of an unfavorable child-support or custody result.

Plaintiff alleges a continuing sequence in which disputed information, evidence handling, governmental records, child-support calculations, enforcement decisions, interstate transmissions, wage withholding, and Treasury certifications caused repeated consequences while Plaintiff attempted to challenge the factual and procedural foundation underlying those consequences.

Plaintiff seeks to establish responsibility **actor by actor, document by document, and event by event**, while preserving the separate dates, proceedings, case identifiers, financial amounts, and enforcement events involved.

Plaintiff requests that the responsible defendants be held accountable for constitutional and other legally actionable violations established through the evidence and that Plaintiff receive all relief authorized by law.

Respectfully submitted,

**Keith Cashawn Alston**
Plaintiff, Pro Se